# Alabama Great Southern Railroad Co. v. Reed.

|     |     |
| --- | --- |
| 124 | 253 |
| 126 | 614 |

*Action to Recover Money Paid for Taxes.*

|     |     |
| --- | --- |
| 124 | 253 |
| 135 | 478 |

1. *Presumption in favor of constitutionality of act of legislature.* Every legislative act is presumed to be constitutional, and every intendment must be indulged by the courts in favor of its validity. The constitutional limitation upon the taxing power in the enactment of laws is not exempt from this general rule.

2. *Act of legislature; how title to may be expressed.*—When the title of an act expresses but one general subject, and all its provisions are allied to the subject expressed, or, as is usually said, germane or cognate to it, all the purposes of the limitation are satisfied.

3. *Special act for DeKalb county; constitutional.*—There is nothing in the act of the legislature, approved February 5, 1891, authorizing the court of county commissioners of DeKalb county to issue bonds for the purpose of securing means for building a court house and for furnishing the same, and for

additions to the county jail, which violates any provision of the constitution.

4.   The act for DeKalb county authorizing the levy of a special tax for school purposes is constitutional.

APPEAL from DeKalb Circuit Court.

Tried before Hon. J. A. BILBRO.

The appellant sued the appellee to recover money paid to him as tax collector, under protest.

The facts are stated in the opinion. The court gave the affirmative charge to the defendant.

A. E. GOODHUE, for appellant, cited, *Randolph v. Builders & Planters Supply Co.*, 106 Ala. 509; *Yerby v. Cochran*, 101 Ala. 544; *Ballentyne v. Wickersham*, 75 Ala. 533; *Ex parte Cowart; Ex parte Reynolds*, 92 Ala. 94; *Montgomery v. State*, 108 Ala. 141.

DAVIS & HARALSON, contra, cited, *Ex parte Gayles*, 108 Ala. 514; *City Council v. N. B. & L. Asso.*, 108 Ala. 336; *The State ex rel. v. Rogers*, 107 Ala. 444.

TYSON, J.—The complaint contains two counts, each founded upon an account for money had and received by the defendant to plaintiff's use. The first count seeks a recovery of one thousand four hundred and forty-five and 56-100 dollars paid by the plaintiff to the defendant under protest and compulsion. Of this amount one thousand and eighty-four and 17-00 dollars was paid on account of a special tax levied by the court of county commissioners "of three twentieths of one per centum on all the taxable property in the county for the purpose of paying semi-annual interest on county bonds, and for the purpose of building a bridge across Town Creek at Chovies" exclusive of the one half of one per centum permitted to be levied under the constitution. The remainder of the fourteen hundred and forty-five and 56-100 dollars, to-wit, three hundred and sixty-one and 39-100 dollars paid by plaintiff to the defendant, as was the three hundred and sixty and 03-100 dollars claimed in the second count of the complaint, was on account of the special school tax levied for the years 1897 and 1898.

[Alabama Great Southern Railroad Co. v. Reed.]

Under article XI, section 5 of the Constitution, "No county in this State shall be authorized to levy a larger rate of taxation, in any one year, on the value of the taxable property therein, than one half of one per centum. *Provided,* that to pay debts existing at the rati fication of this Constitution, an additional rate of one-· fourth of one per centum may be levied and collected which shall be exclusively appropriated to the payment of such debts or the interest thereon. *Provided further,* that to pay any debt or liability now existing against any county, incurred for the erection of the necessary public buildings or other ordinary county purposes, or that may hereafter be created for the erection of neces- sary buildings or bridges, any county may levy and col-· lect such *special* taxes as may have been or may here- after be authorized by law, which taxes so levied and col- lected shall be applied exclusively to the purposes for which the same were so levied and collected."

The right to require the plaintiff to pay the one thou- sand and eighty-four and 17-100 dollars depends in a measure upon the constitutionality of the act of the general assembly approved February 5, 1891, (Acts 1890-91, p. 359) entitled "An act to authorize the court of county commissioners of DeKalb county to issue bonds of said county to an amount not exceeding thirty thousand dollars and to dispose of the same for the pur- pose of securing means for building a court house and furnishing the same with suitable furniture and for building an addition to the county jail of said county."

Section 1 of this act provides, "that for the purpose of securing the means for building a court house, and furnishing the same with suitable furniture and for building an addition to the county jail, for ·DeKalb county, the court of county commissioners for said De- Kalb county is hereby authorized and empowered to issue and dispose of bonds of said county to the amount of thirty thousand dollars or so much ·thereof as said court may deem necessary, payable in twenty years. from said date of issuance etc."

Section 2 provides, that the bonds may be in such sum and shall be made payable at such place or places as the court may direct, and that they shall not be valid

until signed by the county treasurer and countersigned by the judge of probate etc. etc.

Section 3 authorizes the court of county commissioners by a majority vote to do any and all things necessary to carry in effect the provisions of the act at any term of the court, whether regular or special etc. etc.

Section 4 provides, "that said court is hereby authorized to levy a special tax from time to time as may be necessary to pay the interest on said bonds and to pay the principal at maturity."

It is not questioned that the legislature has the power under the section of the constitution above quoted by proper enactment to authorize a special tax to be levied by the court of county commissioners to pay the bonds or interest thereon evidencing an indebtedness created by the county for the erection of the court house and an addition to the county jail. The chief objection, and we may add the only plausible one, taken to the constitutionality of the act, is that it offends section 2 of article IV of the Constitution, which declares that "each law shall contain but one subject which shall be clearly expressed in its title etc."

The object to be accomplished in embodying this clause in the constitution has been so often declared by this court that it will serve no good purpose to repeat it here.—*Ballentyne v. Wickersham,* 75 Ala. 356; *Randolph v. Builders & Painters Supply Co.,* 106 Ala. 507; 3 Brick. Dig. 132, § 84. This limitation upon the exercise of the legislative power in the enactment of laws is not exempt from the general rule that it is only a clear violation of the constitution which will justify the courts in overruling the legislative will. Every legislative act is presumed to be constitutional, and every intendment must be indulged by the courts in favor of its validity. In determining the question here under consideration, this court said in the case of *The State v. Street,* 117 Ala. 208, "When the title of an act expresses but one general subject, and all its provisions are allied to the subject expressed or, as is usually said, germane or cognate to it, all the purposes of the limitations are satisfied. This is the real test in each particular case: When the title expresses one general subject, however

broad and comprehensive the subject may be, whether the act includes provisions, which can by *no fair* intendment be considered as having connection or relation to the subject expressed."

In the case of *Ex parte Pollard,* 40 Ala. 99, it is said: "The question must always be, whether, taking from the title the subject, we can find anything in the bill which cannot be referred to that subject. If we do, the law embraces a subject not described in the title. But this conclusion should never be attained, except by argument characterized by liberality of construction and freedom from all nice verbal criticism."

The leading thought in the title of the act in question, when compared and construed with the act, is obviously the one expressed in the language "for the purpose of securing *means* for building a court house and providing the same with suitable furniture and for building an addition to the county jail of said county.—*Judson v. City of Bessemer,* 87 Ala. 243; *Block v. State,* 82 Ala. 493. The authorization to the court of county commissioners to issue bonds of the county to an amount not exceeding thirty thousand dollars and dispose of them, was only a method adopted to secure the means and might with all propriety have been left out of the title without in anywise impairing the validity of the act. And had the title of the act contained only these words, the authority conferred upon the court of county commissioners to issue the bonds and dispose of them would certainly have been germane to the purpose of securing the means. And so too any other method provided by the act of securing the means for building a court house etc. would be cognate. Nor was the legislature confined to one method only in providing for securing the means, but had the right to provide as many methods for the full accomplishment of the object sought to be attained, as in their wisdom they deemed expedient, provided the clause of the act adopting the methods be so correlated to the subject expressed in the title, as to appear to follow as a natural and legitimate complement.—*Ex parte Mayor and Aldermen of Birmingham,* 116 Ala. 186.

One of the methods of securing the means for building the court house etc. as provided by the fourth sec-

tion of the act under consideration, which is the one as-sailed here as unconstitutional, is the authority con-ferred upon the court of county commissioners to levy a special tax to pay the interest on the bonds and to pay the principal of the bonds at maturity. Had the levy of the special tax been directed for the purpose of secur-ing the means and when collected to be applied to the building of the court house, been the only method pro-vided by the act under the title construed as we here construe this one, no question could arise as to its con-stitutionality. Does the mere fact that the tax when collected shall be applied to the payment of interest on and the principal of the bonds render the method any the less a method to secure the means for building the court house etc.? · We think not. It is the natural and logical complement of rounding out a completion of the purpose declared by the act, to-wit, of securing the means to construct the buildings designated in the act.

In the case of *Hare v. Kennerly*, 83 Ala. 608, the same objection as here was made to the constitutionality of the act (Acts 1880-81, p. 329) entitled an act "to adopt and carry into effect the plan for the adjustment and settlement of the existing indebtedness of the late cor-poration known as the 'mayor, aldermen and common council of the city of Mobile' which is recommended in the report of the 'commissioners of Mobile,' made and laid before the general assembly of Alabama on the 26th day of November, 1880, as provided in section sixteen (16) of an act of the general assembly of Alabama en-titled "An act to vacate and annul the charter and dis-solve the corporation of the city of Mobile and to pro-vide for the application of the assets thereof in discharge of the debts of said corporation.'" By the provisions of the act the commissioners of Mobile were authorized to issue bonds, dispose of them by sale or exchange for out-standing bonds, and a special tax was levied and pro-vision made for the application of the money collected under the levy to pay off the bonds. In addition to this, provisions were made for the assessment of property, collection of taxes by giving a lien therefor, proceeding for the enforcement of the lien, by sale, tax deeds to pur-chasers, method by which collector was to be made ac-

countable etc. Justice Somerville, speaking to the ques-
tion here involved, said: "The general subject of this
law is the adjustment and settlement of the existing in-
debtedness of the late corporation known as the 'Mayor,
Aldermen, and Common Council of the City of Mobile.'
Everything contained in the act, or expressed in the
title, is strictly cognate to this subject. * * * We have
often said that this clause of the constitution 'is not
violated by any legislative act having various details
properly pertinent and germane to one subject.' "—*Ex
parte Upshaw*, 45 Ala. 234; *Board of Revenue v. Bar-
ber*, 53 Ala. 389.

Nor has section 31 of the fourth article of the consti-
tution, any application to the act, nor is it a limitation
of the legislative power exercised in its enactment.—
*The State v. Street, supra.*

The remaining contention against the constitutional-
ity of the statute is that it contains the provision for
furnishing the court house with suitable furniture, in
violation of the provision of the clause of the constitu-
tion first above quoted since that limits the power of the
legislature to levy a special tax to pay such debts cre-
ated by the county for the erection of necessary public
buildings. In this we cannot concur. The authoriza-
tion to levy a tax to erect a court house, includes and
confers the authority to provide for furnishing it with
suitable furniture.

It is suggested however that notwithstanding the act
is constitutional the levy of three-twentieths of one per
cent is void for the reason that it includes in it a pro-
vision for the building of a bridge. No argument is made
in support of it in appellant's counsel's brief and as he
did not deem it of sufficient importance to urge it, we
will not consider it further than to say that it is unten-
able.

The act authorizing the levy of the special tax for
school purposes is constitutional, and the amount paid
by plaintiff on that account cannot be recovered back.
*Southern Railway Co. v. St. Clair Co.,* in MS.

There is no error in the record, and the judgment
must be affirmed.