187 So. 244

### In re OPINION OF THE JUSTICES.

### No. 52.

Supreme Court of Alabama.

March 20, 1939.

Senate Resolution No. 9.

By the Rules Committee

SR #9. Whereas, there is now pending in the Legislature of the State of Alabama, Senate Bill No. 14, a copy of which is hereto attached, and,

Whereas, constitutionality of said bill should be beyond question, therefore be it resolved by the Senate of Alabama, that the Justices of the Supreme Court, or a majority of them, are hereby requested to render to this body a written opinion as provided under Section 10290 of the Code of Alabama of 1923 as to whether said bill violates any section of the Constitution of Alabama, especially in the following particulars:

1. Does said bill authorize the State to engage in "works of internal improvement" contrary to Section 93 of the Constitution?

2. Does said bill violate Section 93 of the Constitution by authorizing the State to engage in works of internal improvement or to lend money or its credit in aid of such in violation of Section 93?

3. Under the provisions of said bill, would the State be interested in any private or corporate enterprise or lend money or

its credit to any individual, association or corporation in violation of Section 93?

4. If you determine that the bill as a whole violates the provisions of Section 93, would the mere acquisition of lands by donation, purchase, condemnation or lease for the purpose of establishing, developing, and maintaining within the State of Alabama concentration produce markets, by the use of such funds as may be available therefor, by the State Board of Agriculture and Industries, all as provided in Section 2 of said bill, violate Section 93 of the Constitution?

By Mr. Harris
S. B. 14.

A Bill to be entitled an Act to further define the powers, functions, duties, and authority of the State Board of Agriculture and Industries of the State of Alabama and of the Commissioner of the State Board of Agriculture and Industries of the State of Alabama.

Be it enacted by the Legislature of Alabama:

Section 1. That after the passage and approval of this Act, the State Board of Agriculture and Industries may by resolution adopted as now provided by law authorize the Commissioner of Agriculture and Industries of the State of Alabama to establish, develop, and maintain within the State of Alabama concentration produce markets for the purpose of further developing and promoting the agricultural interest of the citizens of the State of Alabama.

Section 2. The State Board of Agriculture and Industries for the purpose of establishing, developing, and maintaining such produce markets may acquire land by donation, purchase, condemnation, or lease, and for those purposes may use such funds as may be available to it and not otherwise obligated, and may enter into agreements with the Federal Government or other agency for acquiring by lease, purchase or otherwise such lands as in its judgment are desirable for such produce markets.

Section 3. Whenever lands are acquired or leased under the provisions of this Act, the Commissioner of Agriculture and Industries of the State of Alabama upon resolution of the State Board of Agriculture and Industries adopted according to law authorizing the same, may make expenditures from any funds not otherwise obligated for the management, development, and utilization of such areas for the purposes set forth in this Act, including the building of such structures as may be necessary to house such produce markets, specific authority being hereby granted to said Commissioner to build or cause to be built such structures as in his judgment are necessary and proper to house such produce markets; and the said Commissioner shall have sole charge of all such areas with the authority, subject to control of the State Board of Agriculture and Industries, to do and perform those acts which may be necessary for the proper conduct of such produce markets and shall have authority to make such rules and regulations for the management, administration, occupancy and use of said produce markets and all property and things of whatsoever nature therein or thereon as shall be deemed necessary. The Commissioner of Agriculture and Industries may employ such officers, assistants and employees as may be necessary and fix their compensation, and, as to persons employed wholly or in part in carrying out the provisions of cooperative agreements with the Federal Government or other agency, for such compensation heretofore or hereafter paid, may use such contribution or receipts as may be derived from the United States.

Section 4. The Commissioner of Agriculture and Industries, upon approval of the State Board of Agriculture and Industries, shall have full power and authority to sell, exchange, or lease lands acquired for use as a produce market when, in its judgment, it is advantageous to the State to do so; provided, however, said sale, lease or exchange shall not be contrary to the terms of any contract into which it has entered.

Section 5. All laws and parts of laws in conflict with the provisions of this Act are hereby repealed.

Section 6. If any section or part hereof is held to be unconstitutional, it shall not affect or destroy any other section or part hereof.

Section 7. This Act shall take effect immediately upon its passage and approval by the Governor.

To the Honorable, the Senate of Alabama,
    Montgomery, Alabama.
Sirs:

Replying to your resolution No. 9, relating to Senate Bill 14, Special Session, will say: Your inquiry concerns a constitutional question presented, but not reached for consideration, in the recent case of Goode, Commissioner of Agriculture and Indus-

tries, et al. v. Tyler, Ala.Sup., 186 So. 129.[1] The authorities relied upon in that case were again pressed upon our attention in State ex rel. Wilkinson v. Murphy, Ala. Sup., 186 So. 487,[2] and found cited in this latter case. Perhaps the case of Rippe v. Becker, 56 Minn. 100, 57 N.W. 331, 22 L. R.A. 857, involving the construction of a grain elevator, is one here more nearly in point. Numerous other cases are to be found in the note to State v. Kelly, 71 Kan. 811, 81 P. 450, in 70 L.R.A. 450, 6 Ann.Cas. 298.

■ The authorities cited in State ex rel. Wilkinson v. Murphy, supra, are to the effect that the mere fact of a resulting benefit to the public does not suffice to take the case from without the influence of a constitutional prohibition such as section 93 of our Constitution.

To uphold the bill in question would lead also to approval of the establishment by the State Board of Agriculture and Industries of cotton warehouses throughout the State and the operation by State agencies and employees, or perhaps to other businesses which have long been considered as private enterprises.

■ The Kansas Supreme Court, in State v. Kelly, supra, said: "It has been the policy of our government to exalt the individual rather than the state. * * * Our Constitution was framed and our laws enacted with the idea of protecting, encouraging, and developing individual enterprise." [71 Kan. 811, 81 P. 459.] We think the language of the Kansas Supreme Court in the above mentioned case is equally applicable to our Constitution and our system of State government, and we adopt it as our own.

■ Reference was made in State ex rel. Wilkinson v. Murphy, supra, to the history of section 93 of our Constitution which is to well known to need discussion here. It was the disastrous effects of the State in engaging in business enterprises that led to the adoption of section 93 of the Constitution, and we are of the opinion, from a study of this section, in the light of its history and in the light of the numerous authorities discussing similar constitutional prohibitions cited in State ex rel. Wilkinson v. Murphy, supra, that the bill in question would run counter to section 93 of our Constitution, as originally adopted and as since amended. See, also, Opinion of the Justices, 209 Ala. 593, 96 So. 487.

We consider the foregoing likewise answers your inquiry No. 4.

We know that since the adoption of section 93, amendments have been made thereto, but none in respect to the questions here presented.

Respectfully submitted,

JOHN C. ANDERSON,
Chief Justice.
LUCIEN D. GARDNER,
WILLIAM H. THOMAS,
ARTHUR B. FOSTER,
THOMAS E. KNIGHT,
Associate Justices.

To the Honorable Senate of Alabama
Sirs:

It is well settled "in the United States, that authority to establish and regulate markets falls within the police power of the State, and the right to exercise that authority may be conferred by the State upon municipal corporations," or other public agencies. 18 R.C.L. 370, § 5; Ex parte Byrd, 84 Ala. 17, 4 So. 397, 5 Am.St.Rep. 328. This right and power is recognized by the common law and is coeval with civilization. 18 R.C.L. 367, § 3; Natal v. Louisiana, 139 U.S. 621, 11 S.Ct. 636, 35 L.Ed. 288.

After examination of the authorities I am not satisfied beyond a reasonable doubt that it is not within legislative competence to authorize the Commissioner of Agriculture in the interest of agriculture in general, and the garden farmer and the consuming public specially, to establish said public markets for the sale of said products and to regulate the use of the same.

The evil at which § 93 of the Constitution of 1901 strikes, and the practices that gave it birth, was not the investment of public funds in things entirely public and solely for public use, but the financial profligacy with which reckless officials had, prior to the Constitution of 1875, created obligations of the State by subscriptions to the promotion of institutions and corporations supposed to serve a public purpose, but nevertheless affected with, controlled and dominated by a private interest, that brought financial disaster to the institutions and loss to the State.

Contributions to establish purely public markets in the interest of agriculture, upon which the prosperity of the State and its

---

[1] Ante, p. 106.　　　　　[2] Ante, p. 332.

people depend is not a prohibited internal improvement nor a private interest. Bonsal v. Yellott, 100 Md. 481, 60 A. 593, 69 L.R.A. 914.

I therefore do not concur in the view expressed by the majority.

JOEL B. BROWN,
Associate Justice.

