246 So.2d 903

Peggy L. KNIGHT

v.

WEST ALABAMA ENVIRONMENTAL IMPROVEMENT AUTHORITY, a Public Corporation, et al.

4 Div. 408.

Supreme Court of Alabama.

April 8, 1971.

Alton L. Turner, Luverne, for appellant.

Garet Van Antwerp, III, Mobile, for appellees.

HEFLIN, Chief Justice.

This court holds that the "Environmental Improvement Authority Act of 1969" does not violate the provisions of Sections 93, 94, 213, 45, 42, 43 and 44 of the Constitution of Alabama, as amended.

The "Environmental Improvement Authorities Act of 1969," also identified as Act No. 1117, General Acts of Alabama 1969, Regular Session (which appears in the Code in Sections 270–287 of Title 8, Code 1940, as amended, 1969 Cum.Pocket Part Supp. of the 1958 Recompiled Code of Alabama), was passed by the 1969 Legislature with the proclaimed purpose of authorizing the establishment of public corporations which would have the power to cooperate with and lend financial assistance and other aid to municipalities, communities, counties, industries and public and private corporations in matters and undertakings pertaining to the control, abatement or prevention of water, air, or general environmental pollution. Among other things provided in said act to accomplish the legislative announced purpose, such public corporations

are empowered to issue revenue bonds and to construct, acquire and lease equipment, facilities and systems in connection with the overall purposes of combatting ecological damage.

Appellant, Peggy L. Knight, individually, and as a taxpayer and citizen of the State of Alabama, filed this action seeking to have said Act No. 1117 declared unconstitutional and seeking injunctive relief in the Circuit Court of Crenshaw County as a class action instituted pursuant to Equity Rule 31. The appellees West Alabama Environmental Improvement Authority, North Alabama Environmental Improvement Authority and Southeast Alabama Environmental Improvement Authority are public corporations organized pursuant to and in accordance with the provisions of said Act No. 1117 and were respondents in the lower court as were the other appellees, who are the members and directors of each said authority.

The Attorney General accepted service and waived further notice. The decree of the trial court held said Act No. 1117 did not violate the raised constitutional provisions.

In the court below, the appellant, Peggy L. Knight, raised five principal questions as to the validity of said Act No. 1117, these questions, in summary, being:

"(1) Whether the said Act No. 1117 is invalid as authorizing the State (a) to engage in works of internal improvements; or (b) to lend money or its credit in aid of such works; or (c) to be interested in any private or corporate enterprise; or (d) to lend money or its credit to any individual, association, or corporation, all within the meaning of Section 93 of the Constitution of Alabama, as amended.

"(2) Whether the said Act No. 1117 is invalid as authorizing a 'subdivision' of the State to lend its credit, or to grant public money or thing of value in aid of, or to, individuals, associations or corpora-

tions in violation of Section 94 of the Constitution of Alabama, as amended.

"(3) Whether the sale and issuance of the bonds purported to be authorized by said Act No. 1117 would constitute the creation of a new debt against or the incurring of a new debt by, the State or on its authority, in violation of Section 213 of the Constitution of Alabama, as amended.

"(4) Whether said Act No. 1117 is invalid in that it violates Section 45 of the Constitution of Alabama, as amended, because the provisions of Sections 3, 8(7) and 8(9) of said Act authorizing corporations created under said Act to render financial assistance to industries and private corporations, and of Section 8(10) of said Act authorizing corporations created under said Act to engage in works of watershed improvement, are not expressed in the title of said Act No. 1117.

"(5) Whether there is a wrongful delegation of legislative power, under the provisions of said Act No. 1117, to the Governor in connection with the creation of public corporations under said Act, or to public corporations created thereunder in connection with their exercise of their powers under said Act, rendering the said Act No. 1117 invalid as being in violation of Sections 42, 43 and 44 of the Constitution of Alabama, as amended."

These questions are raised for review by this Court by proper assignments of error.

Question No. 1 involves Section 93 of the Constitution of Alabama. Section 93, as amended, provides, in pertinent part:

"The state shall not engage in works of internal improvement, nor lend money or its credit in aid of such; nor shall the state be interested in any private or corporate enterprise, or lend money or its credit to any individual, association, or corporation, * * *"

There are five principal inhibitions against the State of Alabama embodied in the provisions of said Section 93 of the Constitution. The State is forbidden (1) to engage in works of internal improvement, (2) to lend money in aid of such, (3) to lend its credit in aid of such, (4) to be interested in any private or corporate enterprise, and (5) to lend money or its credit to any individual, association, or corporation.

All of the prohibitions of said Section 93 of the Constitution of Alabama are directed toward the State of Alabama. It is well established by the decisions of this Court that a public corporation is a separate entity from the State and from any local political subdivision thereof, including a city or county, and that the prohibitions of Section 93 are directed to the State and not to public corporations. Edmonson v. State Industrial Development Authority, 279 Ala. 206, 184 So.2d 115; In re Opinion of the Justices, 254 Ala. 506, 49 So.2d 175; In re Opinion of the Justices, 275 Ala. 254, 154 So.2d 12; In re Opinion of the Justices, 270 Ala. 147, 116 So.2d 588.

This Court in *Edmonson* held that the act creating a public corporation for the promotion of industrial growth in Alabama, made up of three state cabinet members, and to which revenue from a special tax was appropriated and pledged for the purpose of carrying out the authority's purpose, did not violate the five restraints contained in said Section 93 of the Constitution. The act which was upheld by *Edmonson* is similar to Act No. 1117 in its basic approaches, but, of course, with differences as to organization, functions, powers and scope.

Nothing in Act No. 1117 authorizes the State, as such, to engage in the works of internal improvement or to lend money in aid of such or to lend its credit in aid of such or to be interested in any private or corporate enterprise, or to lend money or its credit to any individual, association or corporation. The said Act makes the authorities created thereunder separate in-

dependent entities. The control of each such corporation is exercised by a board of directors appointed by the Governor for staggered terms and are removable from their offices as such directors by the process of impeachment. Section 9 of the Act provides that the obligations of the authorities created thereunder shall be solely and exclusively the obligation of the authority and shall not create an obligation or debt of any county or municipality or of the State.

Appellant relies on In re Opinion of the Justices, 237 Ala. 429, 187 So. 244, where this Court held that Section 93 of the Constitution was violated by an act authorizing the Commissioner of Agriculture and Industries to establish produce markets. But in a later case after the legislature authorized an independent board to engage in the same activity, the constitutionality of such action was approved under the separate entity doctrine. See Opinion of the Justices, 247 Ala 66, 22 So.2d 521.

Under the precedents cited, Act No. 1117 is not contrary to the prohibition in Section 93 of the Constitution that the State shall not engage in works of internal improvement.

There is no suggestion in the Act that there is any violation of the inhibition against the State contained in said Section 93 pertaining to the lending of money in aid of works of internal improvement.

The clause pertaining to the restriction against the State lending its credit in aid of internal improvement has been construed to have reference to the employing of the credit of the State for the borrowing of money and the creation of debts. In re Opinion of the Justices, 209 Ala. 593, 96 So. 487. Act No. 1117 does not authorize the State to borrow any money or incur an indebtedness, for the bonds issued by the authority do not create an obligation or debt of the State. The bonds are payable solely from revenues derived by the Authorities from their anti-pollution activities. The State is not committed

to pay in any event and its credit is in nowise involved. This Act does not violate this part of said Section 93 of the Constitution.

The restraints of said Section 93 concerning being interested in any private or corporate enterprise have been construed to mean, with certain exceptions not here relevant, that the State may not engage, alone or in concert with others, in the business of any type generally characterized as private enterprise. State ex rel. Wilkinson v. Murphy, 237 Ala. 332, 186 So. 487, 121 A.L.R. 283; In re Opinion of the Justices, 237 Ala. 429, 187 So. 244. Said Act No. 1117 does not authorize the State to engage in any private enterprise and does not violate this prohibitory clause of said Section 93.

Again the separate entity concept must be considered in connection with whether this Act authorizes that lending of money or credit of the State to any individual, association or corporation contrary to Section 93 of said Constitution. There is nothing in said Act which authorizes the State to do so; therefore, this Court holds that this inhibition contained in Section 93 of the Constitution is not violated by the Act.

This Court concludes that the "Environmental Improvement Authorities Act of 1969" does not violate Section 93 of the Constitution of Alabama.

In considering the second question as to whether or not Act No. 1117 is unconstitutional in that it authorizes a "subdivision" of the State to lend its credit, or to grant public money or a thing of value in aid of, or to individuals, associations, or corporations contrary to Section 94 of the Constitution of Alabama, as amended, the interdictions of Section 94 have reference to the kind of subdivisions of the State defined as political subdivisions such as the counties, cities, towns and probably certain districts which are endowed with governmental functions or powers, even though limited, and which are supported by and are responsible for the protection of public rev-

enues. The same reasoning which underlies the separate entity concept as applied to Section 93 of the Constitution must again be considered. Separate, independent public corporations are not political subdivisions of the State. They are not subdivisions of the State within the meaning of Section 94 of the Constitution, as amended.

■ Previously this Court considered this same question pertaining to an act which created industrial development boards under the "Cater Act" (Act No. 648, Gen.Acts of Alabama 1949, Regular Session) in Opinion of the Justices, 254 Ala. 506, 49 So.2d 175, and held that a public corporation organized under the provisions of that act was not a "subdivision" of the State. Such prohibitions contained in Section 94 of the Constitution were not violated by that act. While the public corporations which were created under Act No. 1117 are somewhat different from those that have been created under the "Cater Act," they are sufficiently similar for this court to conclude that such public corporations are not "subdivisions" of the State and that Act No. 1117 does not violate the inhibitions listed in Section 94 of the Constitution, as amended.

Proceeding to consider the question of whether Act No. 1117 violates Section 213 of the Constitution of Alabama, as amended, it is necessary to again review the separate entity concept. This court has consistently and repeatedly held that the restrictions of Section 213 are solely applicable to the State, as such, and not to separate public corporations, the bonds of which do not constitute a debt of the State. Justice Merrill, in Edmonson v. State Industrial Development Authority, supra, stated the following:

"(9, 10) Bonds issued by a public corporation that is a separate entity from the State will not constitute a new debt of the State within the meaning of Section 213 as amended. We have specifically said that bonds issued by public

corporations of the State do not fall within the prohibition of that section of the Constitution. Opinion of the Justices, 264 Ala. 176, 85 So.2d 391; In re Opinion of the Justices, 256 Ala. 170, 54 So.2d 68. And we have held that the bonds of a public corporation do not constitute a debt of the State. Rogers v. Garlington, 234 Ala. 13, 173 So. 372; Scott v. Alabama State Bridge Corp., 233 Ala. 12, 169 So. 273; Alabama State Bridge Corp. v. Smith, 217 Ala. 311, 116 So. 695. To the same effect are our opinions in Opinion of the Justices, 263 Ala. 174, 81 So.2d 699; Opinion of the Justices, 254 Ala. 506, 49 So.2d 175; In re Opinion of the Justices, 225 Ala. 460, 143 So. 900."

■ This Court holds that Act No. 1117 does not contravene Section 213 of the Constitution, as amended.

The Title of said Act No. 1117 appears in the following words:

"To authorize the creation of public corporations as authorities for the study, control, abatement and prevention of water, air, or general environmental pollution; to allow the construction, acquisition and ownership by such corporations of facilities for this purpose; to prescribe the powers, duties, composition and financing of such corporations; to provide for cooperation with political subdivisions and other agencies and instrumentalities of the state, and to exempt such authorities from taxation."

Among other provisions, Section 45 of the Constitution says that each law enacted by the legislature "shall contain but one subject, which shall be clearly expressed in its title."

■ The title to Act No. 1117 does not make any expressed reference to the provisions of Sections 3, 8(7) and 8(9) of the Act which set forth detailed purposes and powers of such public corporations and authorize said public corporations to render financial assistance to industries and pri-

vate corporations and the provisions of Section 8(1) which authorize the public corporations to engage in works of watershed improvements.

A lucid discussion of this constitutional provision is found in Opinion of the Justices, 275 Ala. 254, 154 So.2d 12, wherein the following language appears:

"(2) One of the purposes of the requirement of Section 45, supra, that the subject of a law shall be clearly expressed in the title, is to prevent surprise or fraud upon the legislature by incorporating in bills provisions not reasonably disclosed by its title, and which might be overlooked, and unintentionally approved in enacting the bill. Opinion of the Justices, 247 Ala. 195, 23 So.2d 505. Another purpose is to fairly apprise the public of the import of the legislature so they may be heard. Grayson v. Stone, 259 Ala. 320, 66 So.2d 438.

"(3) However, this court is committed to the principle that this requirement as to clear expression of the subject of a bill in the title is not to be exactingly enforced in such manner as to cripple legislation, or is it to be enforced with hypercritical exactness, but is to be accorded a liberal interpretation. Kendrick v. Boyd, 255 Ala. 53, 51 So.2d 694; Taylor v. Johnson, 265 Ala. 541, 93 So.2d 143.

"(4) When the subject of a bill is expressed in general terms in the title everything which is necessary to make a complete enactment in regard to it, or which results as a complement of the thought contained in the general expression, is included in and authorized by it. Dearborn v. Johnson, 234 Ala. 84, 173 So. 864."

This Court in Yielding v. State ex rel. Wilkinson, 232 Ala. 292, 167 So. 580, held that a statute has but one subject, no matter to how many different matters it relates if they are all cognate, and but different branches of the same subject.

Examined in the light of the foregoing criteria, Act No. 1117 meets all the requirements of Section 45 of the Alabama Constitution here pertinent. Its title expresses a general idea or subject—the study, control, abatement and prevention of water, air and general environmental pollution. There is no deception. The matters covered in the provisions of the Act relate to or are cognate to the general subject of combatting pollution and the Environmental Improvement Authorities, which are to serve as the agencies for carrying out this purpose.

There is one plan of action—to authorize the creation of public corporations with power to raise funds through revenue bonds for use in carrying out the main objective of controlling, preventing and abating pollution through the construction of facilities for such purposes. The provisions for giving financial, technical and other assistance to the public and private entities will further the purposes of controlling and combatting pollution, as will the detailed powers of such public corporations, and are clearly germane and cognate to the subject of the Act. Likewise is the provision authorizing the public corporations to engage in works of watershed improvement, a very important activity in connection with the control of water pollution. It is not fatal if such provisions and the details of the purposes and powers of such public corporations are not specifically expressed in the title. Clearly, those provisions and such details do not constitute separate unrelated subjects.

In answer to the fourth question, this Court holds that Act No. 1117 is not unconstitutional under Section 45 of the Constitution of Alabama, as amended, in that the provisions of Sections 3, 8(7) and 8(9) of said Act authorizing corporations created under said Act to render financial assistnance to industries and private corporations and of Section 8(10) of said Act authorizing corporations created thereunder to engage in works of watershed improvement were not expressed in the Title of said Act No. 1117.

This Court now addresses itself to the 5th constitutional question raised by the appellant which involves Sections 42, 43 and 44 of the Constitution of Alabama.

Sections 42, 43 and 44 of the Constitution pertain to the separation of powers doctrine, outlining the scope and prohibitions of the powers of the executive, judicial and legislative branches of government. The appellant contends that Act No. 1117 confers upon the Governor legislative power which is forbidden by these sections of the Constitution.

Section 4 of Act No. 1117 delegates certain fact-finding duties upon the Governor. In order to form any Environmental Improvement Authority, application must first be made to the Governor for his review prior to incorporation. The Governor is authorized to examine the statements made in the application for authority to incorporate and to determine whether or not such statements are true. The Act further provides certain guidelines for this determination. His task is purely administrative. He must determine whether or not the applicants and the proposed authority meet the standards set by the legislature. If the requirements of the Act reveal noncompliance, he must deny the application, and if the application reveals compliance, he must issue his executive order authorizing the incorporation. These guidelines provided by the legislature are both clear and reasonable.

With respect to public corporations created under said Act, there are certain administrative powers conferred which are designed to enable them reasonably to carry out the broad purposes of the Act. They can make studies, surveys and undertake to acquire, construct and operate, lease or dispose of facilities for the purpose of abating, preventing and controlling environmental pollution. They must confine themselves to this field and make it their aim to eliminate sources of pollutants which are causing pollution in excess of normal acceptable standards.

This Court in the case of Porter Coal Co. v. Davis, 231 Ala. 359, 362, 165 So. 93, held that the legislature cannot delegate its power to make a law, but it can make a law to delegate a power to determine some fact or state of things upon which the law makes or intends to make its own action depend. To deny this would be to stop the wheels of government. There are many things upon which wise and useful legislation must depend which cannot be known to the law-making power, and must therefore be a subject of inquiry and determination outside of the legislative halls.

In Heck v. Hall, 238 Ala. 274, 190 So. 280, this Court, in upholding the merit system act, quoted with approval the following statement from State ex rel. Adams v. Burdge, 95 Wis. 390, 70 N.W. 347, 37 L.R.A. 157, 60 Am.St.Rep. 123:

"The true test and distinction whether a power is strictly legislative, or whether it is administrative, and merely relates to the execution of the statute law, 'is between the delegation of power to make the law, which necessarily involves a discretion as to what it shall be, and conferring authority or discretion as to its execution, to be exercised under and in pursuance of the law.' The first cannot be done. To the latter, no valid objection can be made."

In Opinion of the Justices, 254 Ala. 506, 49 So.2d 175, while considering the Cater Act, this Court scrutinized the delegation of authority to municipalities in regards to creating industrial development boards and held that it was not inappropriate for the legislature to delegate to a municipality the power to supervise and control the formation of such public corporation within the limits and requirements set by the legislature.

Norton v. Lusk, 248 Ala. 110, 26 So.2d 849, held that the delegation of power to the Governor by the legislature in connection with making an appropriation of a certain sum "to be released upon the ap-

proval of the Governor" was not an improper delegation of legislative power.

Therefore, this Court holds that Act No. 1117 is not in violation of Sections 42, 43 and 44 of the Constitution of Alabama because said Act does not wrongfully delegate legislative power to the Governor in connection with the creation of public corporations under said Act or wrongfully delegate legislative powers to public corporations created under the provisions of said Act in connection with the exercise of their powers under said Act.

The decree of the trial court is due to be, and is, affirmed.

Affirmed.

All the Justices concur except COLEMAN, J., who dissents.

COLEMAN, Justice (dissenting):

One of the five principal questions raised as to the constitutionality of Act No. 1117, approved September 12, 1969; Acts of Alabama, 1969, 1970, Vol. III, page 2060; is whether the body of the act contains provisions which are not clearly expressed in the title contrary to the requirements of Section 45 of the Constitution which, in pertinent part recites:

"Sec. 45. . . . . Each law shall contain but one subject, which shall be clearly expressed in its title . . . ."

This question is stated as number (4) in the opinion of the court.

"In the case of Ex parte Pollard, 40 Ala. 77, 99, it is said: 'The question must always be whether, taking from the title the subject, we can find anything in the bill which cannot be referred to that subject. If we do, the law embraces a subject not described in the title. But this conclusion should never be attained, except by argument characterized by liberality of construction and freedom from all nice verbal criticism.' " Alabama

Great Southern R. Co. v. Reed, 124 Ala. 253, 257, 27 So. 19, 21.

The title of Act No. 1117 recites:

"AN ACT

"To authorize the creation of public corporations as authorities for the study, control, abatement and prevention of water, air, or general environmental pollution; to allow the construction, acquisition and ownership by such corporations of facilities for this purpose; to prescribe the powers, duties, composition and financing of such corporations; to provide for cooperation with political subdivisions and other agencies and instrumentalities of the state, and to exempt such authorities from taxation."

Appellant contends that the body of the act contains the following provisions which are not clearly expressed in its title, to wit:

"Section 3. Purpose of Corporation.— Public corporations may be formed under the provisions of this act for any one or more or all of the following purposes: to undertake, and to make or cause to be made, engineering, technical, financial, legal and other appropriate studies and surveys with respect to water, air, or general environmental pollution problems and hazards within the area of operation; to construct, acquire, own and operate, singly or in conjunction with others, lease, sell and otherwise dispose of, equipment, facilities and systems for the control, abatement, or prevention of water, air, or general environmental pollution; to cooperate with and lend financial assistance and other aid to municipalities, communities, counties, industries and public and private corporations within and outside of the area of operation and within or outside of the boundaries of the State of Alabama, in any matters and undertakings having to do with or the end purpose of which is the control, abatement, or prevention of water, air, or general environmental pollution.

"  .  .  .  .  .  .  .  .

"Section 8.  Powers of Corporation.—
The authority shall have the following
powers, together with all powers inciden-
tal thereto or necessary to the discharge
thereof in corporate form:  .  .  .  .
(6) to acquire, receive and take title to,
by purchase, gift, lease, devise or other-
wise, to hold, keep and develop, and to
transfer, convey, lease, assign, or other-
wise dispose of, property of every kind
and character, real, personal and mixed,
and any and every interest therein, wheth-
er located within or outside of the area
of operation or within or outside of the
State of Alabama;  (7) to acquire, pur-
chase, construct, own, operate, maintain,
enlarge, extend and improve any equip-
ment, plant, apparatus, or system, of
whatever kind and character, used or
which may be useful in connection with
the control, abatement, or prevention of
water, air, or general environmental pol-
lution directly or indirectly, to enter into
arrangements for the operation or joint
operation of the same, to construct or
install the same on the property of others
with their assent, on in conjunction with
or as an integral part of equipment, plants,
or systems of others with their assent,
and to lease, lend or sell any of the same
to counties, municipalities, communities,
industries, firms, businesses, and other
public corporations and authorities, with
or without valuable consideration, in con-
nection with the control, abatement, or
prevention of water, air, or general en-
vironmental pollution, and to discard or
otherwise dispose of the same, with or
without valuable consideration, in the
sole discretion of the authority;  (8) to
undertake and to make or cause to be
made, either singly or in conjunction and
cooperation with others, appropriate
studies, surveys, arrangements, under-
takings and construction designs and plans
and supervision having to do, directly or
indirectly, with the control, abatement, or
prevention of water, air, or general en-
vironmental pollution; provided, how-
ever, that the authority shall not pay out.

any of its funds by way of any form of
remuneration or compensation to any
persons engaged in the making of any
such studies, surveys, arrangements, un-
dertakings, and construction designs,
plans and supervision other than to per-
sons who are directly employed in that
connection by the authority and who are
not answerable to any other person;  (9)
to make available and give, subject to the
provisions of clause (8) of this section,
to counties, municipalities, communities,
industries, firms, businesses, and other
public corporations and authorities, finan-
cial and technical assistance and aid of
every kind and character which will di-
rectly or indirectly promote, encourage,
or effect the control, abatement, or pre-
vention of water, air, or general environ-
mental pollution;  (10) to engage in works
of watershed improvement, either singly
or in conjunction and cooperation with
others;  .  .  .  ."

The title of Act No. 1117 gives notice
that the act authorizes creation of public
corporations to study, control, abate, and
prevent water, air, or general environmental
pollution;  to allow the construction and
ownership *"by such corporations"* of facil-
ities for this purpose;  to prescribe the
powers, duties, composition, and financing
of such corporations;  and to provide *"for
cooperation"* with political sudivisions and
other agencies and instrumentalities of the
state.

Section 3 of the body of the act provides
that corporations may be formed under the
act to construct, acquire, own, and operate
equipment and facilities for the control,
abatement, or prevention of pollution;
which appears to be a power or purpose
expressed in the title.  Section 3, however,
provides also that the corporations formed
under the act may be for the purposes to
"  .  .  .  .  lease, sell and otherwise dis-
pose of, equipment, facilities and systems
.  .  .  ." and to "  .  .  .  .  lend fi-
nancial assistance  .  .  .  .  to municipal-
ities, communities, counties, industries and
public and private corporations  .  .  .  .

within or outside of the boundaries of the State of Alabama, in any matters and undertakings having to do with . . . . the control, abatement, or prevention of water, air, or general environmental pollution."

I find nothing in the title to give notice that the act proposes to empower such corporations "to lease, sell and otherwise dispose of" equipment and facilities to be acquired by the corporation, or to "lend financial assistance" to municipalities or counties, or industries, or public and private corporations within and outside the boundaries of the State of Alabama.

Section 8 provides that the created corporations shall have power " . . . . to transfer, convey . . . . or otherwise dispose of, property of every kind and character, real, personal and mixed . . . . whether located within or outside of the area of operation or within or outside of the State of Alabama . . . . " Section 8, in clause (7), authorizes corporate power to acquire and purchase apparatus " . . . . which may be useful" in control of pollution and "to lease, lend or sell any of the same" to municipalities, counties, firms, businesses, " . . . . with or without valuable consideration . . . ." and " . . . . to discard or otherwise dispose of the same, with or without valuable consideration . . . ."

Clause (9) authorizes the corporation " . . . . to . . . . give, subject to . . . . clause (8) of this section, to counties . . . . industries, firms, businesses . . . .," and others, " . . . . *financial* and technical assistance . . . . of every kind and character which will directly or indirectly promote . . . . or effect the control . . . . of water, air, or general environmental pollution."

Clause (10) authorizes the corporation to engage "in works of watershed improvement . . . . "

The title gives notice that the act provides for "cooperation with political subdivisions and other agencies and instrumentalities of the state . . . .," but this recitation in the title does not suggest that the corporation shall "cooperate" to the extent of selling apparatus or property with or without consideration, or giving financial assistance. This writer does not find in the title any notice that the corporation will have power to engage in watershed improvement.

For the reasons which I have undertaken to state, I am of opinion that Act No. 1117 does not conform to the requirements of Section 45 of the Constitution, and respectfully dissent.