319 So.2d 699

**OPINION OF THE JUSTICES.**

**No. 216.**

Supreme Court of Alabama.

Sept. 2, 1975.

572

William J. Baxley, Atty. Gen. and Kent B. Brunson, Asst. Atty. Gen., and Cabaniss, Johnston, Gardner, Dumas & O'Neal and Bishop, Sweeney & Colvin, Birmingham, for amicus curiae, in support of the constitutionality of the Act.

To the Members of the House of
   Representatives
State Capitol
Montgomery, Alabama

Sirs and Madam:

We are in receipt of House Resolution No. 163 which recites as follows:

"HOUSE RESOLUTION No. 163

"WHEREAS, important constitutional questions are presented by House Bill No. 1286, a copy of which is attached hereto, now pending in the Legislature of Alabama:

"NOW, THEREFORE, BE IT RESOLVED BY THE HOUSE OF REPRESENTATIVES OF ALABAMA that the Justices of the Supreme Court of Alabama are hereby respectfully requested to render their opinion as provided by Section 34 of Title 13 of the Code of Alabama of 1940 on the following important constitutional questions:

"(1) Does the bill contain more than one subject in violation of Section 45 of the Constitution?

"(2) Is the subject of the bill clearly expressed in its title, as required by Section 45 of the Constitution?

"(3) Does the bill violate the provisions of Section 94 of the Constitution?

"(4) Do the provisions of the bill authorizing Municipal Electric Authorities, as public corporations, to exercise any one or more of the powers, rights and privileges jointly or in common with one or more other parties, authorities, cooperatives, corporations or utilities, public or private, to own an undivided interest in electric generation, transmission, transformation and distribution facilities with such other parties, to designate one or more of such parties as agent and to delegate powers and duties to such agent violate Section 94 of the Constitution?

"(5) Does the bill violate the provisions of Section 93 of the Constitution?

"(6) Does the bill constitute a special act conferring corporate powers in violation of Section 229 of the Constitution?

"(7) Do the provisions of the bill which authorize the incorporation of Municipal Electric Authorities violate Section 104(6) of the Constitution?

"(8) Does the bill violate Section 222 of the Constitution by authorizing the issuance of bonds without an election of the qualified voters of the municipalities, the governing bodies of which have authorized the organization of a public corporation, as contemplated by said bill?

"(9) Does the bill violate Section 225 of the Constitution by authorizing the issuance of bonds and other securities without regard to the limitation of indebtedness prescribed by said Section 225?

"(10) Do the provisions of the bill which state the manner whereby votes of

the Board of Commissioners of a Municipal Electric Authority shall be distributed violate the due process clause of 14th Amendment of the Constitution?"

We consider your questions in the order in which they were asked:

■ (1) This court has observed that one of the purposes of Section 45 of the Constitution of Alabama is to prevent surprise and fraud upon the legislature by prohibiting the inclusion of measures in a bill not reflected in the title. *Opinion of the Justices,* 275 Ala. 254, 154 So.2d 12 (1963). But in the same advisory opinion we observed our commitment to liberally enforce this requirement so that legislation would not be unduly crippled.

■ Keeping this commitment in mind, we must apply the test of Section 45, i. e., ". . . '. . . whether we can find anything in the bill which cannot be referred to the subject.'" *Lovejoy v. City of Montgomery,* 180 Ala. 473, 476, 477, 61 So. 597, 599 (1913); *Opinion of the Justices,* 270 Ala. 38, 115 So.2d 464 (1959). Is there but one general subject which is fairly disclosed by its title? *Norton v. Lusk,* 248 Ala. 110, 26 So.2d 849 (1946).

■ We are of the opinion that the constitutional requirements of Section 45 are met in House Bill No. 1286. While the provisions of the act are comprehensive and detailed, we think there is but one general subject—the creation of Municipal Electric Authorities, with the power to finance, develop, own, operate, and maintain systems and facilities for the generation and distribution of electrical power. "A statute has but one subject, no matter how many different matters it relates to, if they are all cognate, and but different branches of the same subject." *Yielding v. State,* 232 Ala. 292, 296, 167 So. 580, 583 (1936). It should not be fatal that the purposes and powers of these Authorities are not specifically expressed in the title. See *Knight v. West Alabama Environmental Improve-*

*ment Authority,* 287 Ala. 15, 246 So.2d 903 (1971). Under the liberal construction to which we are committed, House Bill No. 1286 satisfies the one-subject requirement of Section 45.

■ (2) Section 45 also requires that the subject of the bill be clearly expressed in its title. Thus, this court must determine whether the title of House Bill 1286 is ". . . so misleading and uncertain that the average legislator or person reading the same would not be informed of the purpose of the enactment . . ." *Pillans v. Hancock,* 203 Ala. 570, 572, 84 So. 757, 759 (1919). Moreover, "When there is fair expression of the subject in the title, all matters reasonably connected with it, and all proper agencies or instrumentalities, or measures, which will or may facilitate its accomplishment, are proper to be incorporated into the act . . ." *Lindsay v. United States Savings & Loan Association,* 120 Ala. 156, 173, 24 So. 171, 176 (1897). We conclude that the title of House Bill No. 1286 has satisfied this requirement.

■ (3) We find no violation of Section 94, Constitution of 1901, which prohibits the authorization of:

". . . any county, city, town, or other subdivision of this state to lend its credit, or to grant public money or thing of value in aid of, or to any individual, association, or corporation whatsoever, or to become a stockholder in any such corporation, association, or company, by issuing bonds or otherwise."

The Authority authorized under this bill will not be "a county, city, town, or other subdivision of the state." In determining the application of this section to other public corporations, this court has found such corporations not to be "subdivisions" of the state. *Knight v. West Alabama Environmental Improvement Authority,* supra; *Opinion of the Justices,* 254 Ala. 506, 49 So.2d 175 (1950).

An analysis of the authorities granted to the municipalities to create an Authority does not reveal a violation of Section 94. House Bill 1286 gives municipalities the following authorities: (a) An Eligible Municipality may adopt a resolution which declares the desirability of organizing and incorporating an Authority, and authorizes the mayor or other chief executive to proceed with the organization and incorporation; (b) after such incorporation, any Eligible Municipality not already a member may become a member with the consent of a majority of the governing bodies of the then Member Municipalities; (c) Member Municipalities may withdraw from membership in an Authority in a like manner; (d) governing bodies of a majority of the Member Municipalities must, by resolution, approve amendments to the certificate of incorporation; (e) each Member Municipality appoints one commissioner to the board of commissioners; (f) a plan of dissolution of an Authority must be approved by its Member Municipalities and upon dissolution, the property of the Authority is distributed to the Member Municipalities according to such plan. We do not think that any of the above actions constitute the lending of credit, a grant of public money or thing of value or becoming a stockholder in a private corporation, association or company. See *Opinion of the Justices,* supra, 254 Ala. 506, 49 So.2d 175.

(4) Section 17 of House Bill 1286 is compatible with Section 94 of the Constitution. While the bill authorizes an Authority to enter into contracts with Eligible Participants, no authority is given to a city or town to enter into such contracts.

(5) Section 93 of the Constitution provides:

"The state shall not engage in works of internal improvement, nor lend money or its credit in aid of such; nor shall the state be interested in any private or corporate enterprise, or lend money or its credit to any individual, association, or corporation."

" . . . It is well established by the decisions of this Court that a public corporation is a separate entity from the State and from any local political subdivision thereof . . . and that the prohibitions of Section 93 are directed to the State and not to public corporations." *Knight v. West Alabama Environmental Improvement Authority,* supra, 287 Ala. at 19, 246 So.2d at 905.

(6) and (7) Section 229 of the Constitution prohibits special acts conferring corporate powers; Section 104(6) prohibits the legislature from enacting any special, private or local law in granting a charter to any corporation. Section 110 defines a local law as " . . . a law which applies to any political subdivision or subdivisions of the state less than the whole," and defines a special or private law as " . . . one which applies to an individual, association, or corporation."

There is no question that this section is applicable to public as well as private corporations. See *State v. Harris,* 273 Ala. 374, 141 So.2d 175 (1961). Nevertheless, we find this to be a general law rather than a special or local law. This law would apply to *any* "Eligible Municipality" within the state, and applies to no individual, association or corporation.

(8) Section 222 of the Constitution grants the legislature the authority to pass general laws authorizing counties, cities, towns, villages, districts or other political subdivisions to issue bonds *but only* if first authorized by a majority vote of the qualified voters of the political subdivision.

Amendment CVIII (108) provides:

"Each *public corporation* heretofore or hereafter organized or created in this state pursuant to authorization or determination by any municipality or municipalities, or county or counties, or the governing body of any one or more thereof, shall for the purposes of sections 222, 224, and 225 of this constitu-

tion be deemed to be a *separate entity* from such municipality or municipalities, or county or counties. Bonds and other securities heretofore or hereafter issued by any public corporation so organized shall not be deemed to constitute bonds or indebtedness within the meaning of said sections even though property, whether or not capable of producing income, may have been transferred to such public corporation by any one or more of such municipalities or counties either with or without the payment of pecuniary or other consideration." (Emphasis added)

It is, therefore, clear that the public corporation which is the subject of House Bill 1286 is not a political subdivision within the meaning of Section 222. See *Smith v. Waterworks Board of City of Cullman*, 234 Ala. 418, 175 So. 380 (1937).

■ (9) Section 225 establishes debt limitations for cities, towns, and other municipal corporations. Again, Amendment 108 would remove the public corporation which would be created by House Bill 1286 from the application of this section.

■ Additionally, the bonds authorized by this bill are not "bonds" within the meaning of Section 222, or "debts" within the meaning of Section 225. The bill specifically provides that "The bonds, notes and other obligations . . . shall not be payable out of any funds other than the revenues of the Project or Projects or the undivided interest therein of an Authority . . . ." Thus, these bonds are not caught by § 222 nor § 225. *Newberry v. City of Andalusia*, 257 Ala. 49, 57 So.2d 629 (1952).

Additionally, we observe that Amendment 107 to the Constitution of Alabama provides that:

"Revenue bonds and other revenue securities at any time issued by a municipality for the purpose of extending, en-

larging or improving any water, sewer, gas or *electric system* then owned by such municipality shall not be deemed to constitute bonds or indebtedness of such municipality within the meaning of sections 222 and 225 of this Constitution *if* by their terms such bonds or other securities are not made a charge on the general credit or tax revenues of the issuing municipality and are made *payable solely out of revenues derived from the operation of any one or more of such system.*" (Emphasis added)

We are of the opinion that House Bill 1286 does not violate either Section 222 or 225.

■ (10) The Supreme Court of the United States, in *Reynolds v. Sims*, 377 U. S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964), held that state legislatures must be apportioned on a population basis.

However, we think *Salyer Land Co. v. Tulare Lake Basin Water Storage District*, 410 U.S. 719, 93 S.Ct. 1224, 35 L.Ed.2d 659 (1973), is more in point here. In that case, District Board managed the business of the district—whose votes were weighted according to land values. These elections escaped the application of *Reynolds,* supra, because the Water District did not perform the normal governmental functions and because the landowners were affected in a disproportionate manner.

We do not believe that the voting scheme outlined in Section 9 of House Bill 1286 violates 14th Amendment of the Constitution of the United States. The Supreme Court of the United States, in *Reynolds v. Sims,* supra, held that all state legislatures must reflect popular representation as nearly as practicable. However, that rule has not been extended to non-governing bodies. In *Salyer Land Co. v. Tulare Lake Basin Water Storage District,* supra, it was held that a water storage district, by reason of its special limited purpose and the disproportionate effect of its

578

activities on landowners as a group, was an exception to *Reynolds* and did not offend the Constitution. In *Salyer,* the California statute permitted only landowners to vote in water storage district elections, and the vote in those elections was apportioned according to the assessed valuation of the land. The court found that landowners as a class were to bear the entire burden of the district's cost, and the state could rationally conclude that they should be charged with the responsibility for its operation. The court found that the benefits and burdens to each landowner were in proportion to the assessed value of the land and that the California statute permitting voting in the same proportion was rationally based. It seems to us that *Salyer* permits the voting scheme provided for in Section 9 of House Bill 1286 and we answer Question 10 in the negative.

We, therefore, find that the voting scheme outlined in Section 9 of House Bill 1286 is not violative of the one-man, one-vote rule of *Reynolds.*

■ We must note that this advisory opinion is ". . . non-judicial; this for the obvious reason that advisory opinions given do not conclude or vindicate any right or remedy, result in no judgment or decree, bind no one whatsoever. [Citations Omitted]" *Opinion of the Justices,* 280 Ala. 692, 703, 198 So.2d 269, 280 (1967).

Respectfully submitted,

HOWELL T. HEFLIN
Chief Justice

PELHAM J. MERRILL

JAMES N. BLOODWORTH

HUGH MADDOX

JAMES H. FAULKNER

RENEAU P. ALMON

JANIE L. SHORES

ERIC EMBRY
Associate Justices