670 So.2d 689 (1996)
Ezra Shane YOUNG, Plaintiff-Appellant,
v.
Elaine YOUNG, Defendant-Appellee.
No. 95-1300.
Court of Appeal of Louisiana, Third Circuit.
March 6, 1996.
*690 George Leopold Celles, IV, Natchitoches, John William Pickett, Many, for Ezra Shane Young.
Elaine Young, pro se.
Before DOUCET, C.J., and YELVERTON and SAUNDERS, JJ.
YELVERTON, Judge.
Ezra Shane Young appeals a judgment of the trial court declining jurisdiction in a custody action. The trial judge granted an exception and dismissed Ezra's Louisiana petition against his wife Elaine for custody of their child, two-month old Clay Justice. Ezra appealed. We affirm.

JURISDICTIONAL FACTS AND PROCEDURAL HISTORY
Ezra Shane Young and Elaine Young were married in Wise County, Texas on July 16, 1989. The couple established their matrimonial domicile in Bridgeport, Texas, where they lived for two years before moving to Sabine Parish, Louisiana. During April 1993, they separated and Elaine returned to Bridgeport, Texas to live with her parents. Ezra continued to live in Louisiana, where he worked as a truck driver. Although they did not live together, Ezra would visit Elaine in Texas. A child was conceived. Clay Justice was born in Decatur, Texas on January 23, 1995.
On March 15, 1995, Ezra took the child, on a pretext, from Texas to Louisiana. Elaine contacted the Wise County Sheriffs Department on March 18, 1995, and filed a missing persons report. The next day after he took the child, Ezra filed a petition for divorce and custody of the child in the Eleventh Judicial District court for Sabine Parish, based on his residency in that parish. On March 20, the trial judge to whom the case was assigned gave telephone authority to another judge of the district to grant Ezra an ex parte order of temporary custody; the judge also authorized the setting of a custody hearing date and the appointment of a curator ad hoc to represent the absentee, Elaine. This authority was granted on the strength of misleading allegations of fact in the petition.
On March 29, Elaine, through her appointed curator-ad-hoc, filed a declinatory exception of jurisdiction. The trial judge conducted a hearing on April 17. At the hearing no evidence was taken; however, court and counsel discussed the jurisdictional facts, which were undisputed, and agreed that the exception would be submitted on memoranda. That was done. The matter was considered submitted on May 8, and the court ruled on May 9, sustaining the exception, dismissing Ezra's petition, and vacating all orders previously granted.
Ezra then changed attorneys and on May 16, filed a motion for a new trial of the exception. Therein, his new attorney claimed, as one of the grounds for the motion for a new trial, that no hearing was held on *691 the jurisdiction exception, depriving him of the opportunity to present evidence in support of the court's jurisdiction. The other ground for Ezra's motion for a new trial, raised for the first time, was an allegation that the court should exercise its emergency jurisdiction. The motion for a new trial was set for hearing.
On July 24, the same date that the motion for a new trial was scheduled to be heard, Elaine petitioned for divorce and custody in Wise County, Texas. In her petition she alleged that although Ezra was not a resident or domiciliary of Texas, it was the last matrimonial residence of the parties. She further alleged that Texas was the home state of the minor child, and therefore, had jurisdiction to determine custody. The record does not tell us whether Texas assumed jurisdiction of the matters set forth in her petition.
The motion for a new trial was heard. Evidence of Ezra's Louisiana voter's registration card, his Louisiana driver's license, and correspondence from his employer to his Louisiana address was submitted to establish his residency in Louisiana. As to the child custody matter the trial judge refused to admit any evidence or testimony to support the newly asserted attempt by Ezra to create emergency jurisdiction. The judge explained for the benefit of Ezra's new attorney that, when the exception of jurisdiction was heard, both counsel agreed on the facts and agreed that the matter would be submitted on memorandum. The judge observed that Ezra could not add anything that he was not already aware of when the exception was heard. He made it clear that there was nothing in the original petition, filed March 26, 1995, to support the exercise of emergency jurisdiction. Ezra testified that he brought the child to Louisiana in March 1995 because "my wife wouldn't take care of him like I felt like he should be taken care of. She wasn't doing good enough of a job of it as a mother." In denying the motion for a new trial on the exception the trial judge determined that pursuant to La.R.S. 13:1702 the court was without jurisdiction.
On appeal, Ezra contends that the trial court erred by not allowing him to introduce evidence in order to consider whether to accept jurisdiction under the emergency provisions of the Uniform Child Custody Jurisdiction Act, La.R.S. 13:1702(A)(3). The only issue on appeal is whether the trial judge was right or wrong in refusing to hear evidence of Texas living conditions for emergency jurisdiction purposes under La.R.S. 13:1702(A)(3).

LAW AND DISCUSSION
Both Louisiana and Texas are signatories to the Uniform Child Custody Jurisdiction Act (UCCJA). La.R.S. 13:1700 et seq., V.T.C.A., Family Code Secs. 11.51 to 11.75. The Act seeks to avoid jurisdictional competition and conflict, to promote interstate cooperation, to litigate custody where the child and family have the closest connections and where significant evidence concerning the child is most readily available, to discourage continuing conflict over custody, to deter abductions and unilateral removals of children, to avoid re-litigation of another state's custody rulings, and to promote the exchange of information and mutual assistance in custody matters between different states. La.R.S. 13:1700.
In setting forth the jurisdictional authority and limitations of the UCCJA, La.R.S. 13:1702 provides:
A. A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:
(1) This state (i) is the home state of the child at the time of commencement of the proceeding, or (ii) had been the child's home state within six months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state; or
(2) It is in the best interest of the child that a court of this state assume jurisdiction because (i) the child and his parents, or the child and at least one contestant, have a significant connection with this state, and (ii) there is available in this state *692 substantial evidence concerning the child's present or future care, protection, training, and personal relationships; or
(3) The child is physically present in this state and (i) the child has been abandoned or (ii) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent; or

(4)(i) It appears that no other state would have jurisdiction under prerequisites substantially in accordance with Paragraphs (1), (2), (3), or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and (ii) it is in the best interest of the child that this court assume jurisdiction.
B. Except under Paragraphs (3) and (4) of Subsection A, physical presence in this state of the child, or of the child and one of the contestants, is not alone sufficient to confer jurisdiction on a court of this state to make a child custody determination.
C. Physical presence of the child, while desirable, is not a prerequisite for jurisdiction to determine his custody.
(Emphasis added.)
On appeal Ezra seeks to have this case remanded and afforded the opportunity to present evidence of neglect by the mother of Clay. He argues that La.R.S. 13:1702(A)(3) commands the trial court to hear testimony and accept evidence to determine if a sufficient "emergency" existed to accept jurisdiction.
Ezra's actions violated the stated purpose of the UCCJA to "deter abductions and other unilateral removals of children undertaken to obtain custody awards." La.R.S. 13:1700(A)(5). And as the trial judge intimated during the proceedings on the motion for a new trial, the court may decline jurisdiction based on Ezra's conduct pursuant to La.R.S. 13:1707[1], if this is just and proper under the circumstances. See Gibson v. Gibson, 429 So.2d. 877 (La.App. 3 Cir.1983). The trial court in this case had good reason to decline jurisdiction.
In Ezra's petition, filed the day after he brought Clay to Louisiana, he alleged that he and the child's mother separated on March 14, 1995. He personally verified that allegation, which turned out to be patently untrue and which was made to bolster the further allegation that he "presently [had] the physical care, custody and control of the minor child." These allegations misled the trial court into believing that Ezra had had actual custody of the child since the separation and was merely asking for a temporary custody order. Not a word was alleged that an emergency existed to protect the child because of actual or threatened mistreatment or abuse or neglect.
The trial judge made it clear that Ezra's conduct throughout this case showed his real reason for bringing Clay to Louisiana was to get the home field advantage when custody was decided.
It is evident from the record that a Louisiana court does not have jurisdiction under any other provision of La.R.S. 13:1702. Texas was the "home state" of Clay.[2] He was born in Texas and lived there with his mother until he was brought to Louisiana by his father. He had not lived here for at least six consecutive months at the time the proceeding was commenced. See Revere v. Revere, 389 So.2d. 1277 (La.1980). Likewise, Clay did not have any "significant connections" with this state other than that his *693 father and paternal grandparents lived here. Clay was only two months old when he was brought to Louisiana in March of 1995. Based on what was before the trial court, all significant connections were with the State of Texas. A Texas court was the more appropriate forum to gather evidence concerning a proper custody award in this case.
As the record reveals, the trial judge stated that he intended to communicate with the judge presiding over the matter in the Texas court to determine the appropriate forum. He also granted Ezra temporary custody of Clay which was presumably in the best interest of the child at that time.
The trial judge did not err in refusing to allow Ezra to introduce evidence to support his allegations of neglect in Texas. His action of declining jurisdiction was consistent with the scheme and purposes of the Act.
For the foregoing reasons, the judgment of the trial court granting the exception of jurisdiction is affirmed. Costs are assessed to Ezra Shane Young.
AFFIRMED.
NOTES
[1] La.R.S. 13:1707. Jurisdiction declined by reason of conduct

A. If the petitioner for an initial decree has wrongfully taken the child from another state or has engaged in similar reprehensible conduct the court may decline to exercise jurisdiction if this is just and proper under the circumstances ...
[2] La.R.S. 13:1701(5) defines "home state" as:

(5) "Home state" means the state in which the child immediately preceding the time involved lived with his parents, a parent, or a person acting as parent, for at least six consecutive months, and in the case of a child less than six months old the state in which the child lived from birth with any of the persons mentioned. Periods of temporary absence of any of the named persons are counted as part of the six-month or other period.