MADDOX, Justice.
This is a sovereign immunity ease. Stall-ings & Sons, Inc. (“Stallings”), sued the Alabama Building Renovation Finance Authority (“Authority”), alleging that the Authority had breached its contract with Stallings. The trial court entered a summary judgment in favor of the Authority, on the basis that the Authority was immune from suit pursuant to the provisions of Art. I, § 14, Ala. Const. 1901, which provides that “the State of Alabama shall never be made a defendant in any court of law or equity.” Stallings appealed. We hold that the Authority is not an arm of the state for purposes of § 14, and that, therefore, the Authority is not immune from suit. Consequently, we reverse the judgment and remand the cause to the trial court for further proceedings consistent with this opinion.

Facts

Act No. 90-602, Ala. Acts 1990, authorized the creation of the Authority for the purpose of renovating, maintaining, and operating certain state office buildings in Montgomery. Pursuant to Act No. 90-602, the Authority was incorporated as a public corporation; the governor, the finance director, and the state treasurer serve as its governing body. In 1992 the Authority undertook to renovate the seventh floor of the Folsom Administrative Buflding, located in the capítol complex in Montgomery. As required by law, the renovation project was competitively bid and Stallings submitted the lowest bid. The Authority awarded the bid to Stallings, and on February 4,1993, Stallings and the Authority entered into a contract for the renovation project. Stallings completed the renovation work on or around July 5,1993, and was paid $1,088,683.55. Stallings claims that $18,-239.45 remains unpaid for work performed pursuant to this contract.
Stallings also alleges that it entered into another agreement in the form of a “change order” to the original contract, pursuant to which Stallings agreed to strip and repaint the exterior of the Folsom Building for a fee of $454,444. Stallings says that it then subcontracted with L & L Painting, Inc., to complete the work contemplated by this change order.[1] In January 1995, Finance Director Jimmy Baker, on behalf of the Authority, notified Stallings that the Authority was rescinding the change order. On April 28,1995, Stallings filed this action against the Authority, alleging that it had improperly rescinded the change order, which Stallings argues was legally binding, and seeking damages.
Both parties moved for a summary judgment. The Authority argued that it was immune from suit and that even if it were not, the change order was never approved and that, therefore, no contract existed between Stallings and the Authority for the exterior work. The trial court held a hearing on the motions and entered a summary judgment in favor of the Authority, stating that “only one ground need be addressed because it is dispositive of this action,” i.e., whether the Authority was “an arm of the state and therefore constitutionally immune from suit pursuant to Alabama Const., Art I, § 14.” (R. 438.) The trial court found that the Authority was an arm of the state and was, therefore, immune from suit.

Issue

The issue is whether Stallings’s breach of contract action against the Authority is really an action against the state under § 14, Ala. Const.1901, and therefore barred by the doctrine of sovereign immunity.

Analysis

The proper test to determine whether the Authority is an arm of the state and therefore immune from suit is found in Armory Commission of Alabama v. Staudt, 388 So.2d 991 (Ala.1980), where this Court held:
*792 “Whether a lawsuit against a body created by legislative enactment is a suit against the state depends on the [1] character of power delegated to the body, [2] the relation of the body to the state, and [8] the nature of the function performed by the body. All factors in the relationship must be examined to determine whether the suit is against an arm of the state or merely against a franchisee licensed for some beneficial purpose.”
388 So.2d at 993, citing State Docks Commission v. Barnes, 225 Ala. 403, 406-07, 143 So. 581, 584 (1932).
Applying the law enunciated in Staudt, the trial court found:
“[T]he governing body of the Authority is composed of the highest constitutional officer of the state, the governor; and is also composed of the state treasurer and the state finance director. The Authority holds title to and maintains the following public buildings: the Alabama State House; the Folsom Administrat[ive] Building; the Public Health Building; the Judicial Building[2]; the Public Safety Building; the Archives and History Building; and the State Office Budding. Although the Authority is a public corporation, ... § 41-10-454 expressly provides that the Authority is an agency of the state.”
(R. 438.)
The Staudt test examines the complete relationship between the state and the entity seeking immunity from suit; therefore, we must first review the powers delegated to the Authority in § 41-10-456. This section provides that the Authority shall have, among other powers, the power “to sue and be sued and to prosecute and defend, at law or in equity, in any court having jurisdiction of the subject matter and of the parties thereto.” In Staudt, this Court construed a legislative provision similar to the one here, i.e. one authorizing the Armory Commission to “sue and be sued,” and noted that, because the Alabama Constitution prohibits actions against the state, the legislature cannot consent to such an action if the entity is immune from suit. Staudt, 388 So.2d at 993. Although, such a clause is not determinative of an Authority’s status, it does show the intent of the legislature to create a separate entity rather than an agency or an arm of the state.
Second, we must analyze the relationship between the Authority and the state. Section 41-10-466, Ala.Code 1975, provides that “[a]ll obligations incurred by the authority and all bonds issued by it shall be solely and exclusively an obligation of the authority and shall not create an obligation or debt of the state of Alabama.” Stallings argues that, in light of the inclusion of this language in the enabling legislation, the Authority, if it is an arm of the state, cannot perform its necessary functions without violating § 213, Ala. Const.1901, which provides that “any act creating or incurring any new debt against the state, except as herein provided for, shall be absolutely void.” [3] We agree. “It has been repeatedly held that a public corporation is an entity separate and distinct from the State, and that debts of such corporation are not debts of the State, within the purview of Section 213.” Opinion of the Justices, 270 Ala. 147, 148, 116 So.2d 588 (1959). In Edmonson v. State Industrial Development Authority, 279 Ala. 206, 210, 184 So.2d 115, 119 (1966), this Court said: “Bonds issued by a public corporation that is a separate entity from the State will not constitute a new debt of the State within the meaning of Section 213, as amended.” (Emphasis added.) See also Knight v. West Alabama Environmental Improvement Auth., 287 Ala. 15, 246 So.2d 903 (1971). “A public corporation is a separate entity from the state and from any local *793 political subdivision.” Coxe v. Water Works Bd., 288 Ala. 332, 337, 261 So.2d 12 (1972).
The Authority argues that because the governor, the finance director, and the state treasurer are members of the board of directors of the Authority, the Authority is an arm of the state. However, the composition of the Authority’s board of directors is not substantially different in this respect from many other authorities. Many authorities include state officials as members of their boards of directors. We have found no precedent holding that membership on an authority’s board of directors of the governor, the finance director, the state treasurer, or, for that matter, any state officer is determinative of whether an authority is an entity that could be sued or one that is immune from suit.
Finally, we must examine the nature of the function performed by the Authority. This function is expressed in § 41-10-450, Ala. Code 1975, where the legislature expressed its reasons for establishing the Authority:
“It is the intent of the legislature ... to authorize the incorporation of the governor, the director of finance, and the state treasurer as a public corporation for the sole purpose of renovating, reconstructing, improving, altering, equipping, operating and maintaining or contracting for the renovation, reconstruction, improvement, alteration, equipment, operation and maintenance of public office buildings, including the state capítol, and to vest such corporation with all powers, authority, rights, privileges, and titles that may be necessary to enable it to accomplish such purpose. This article shall be liberally construed in conformity with the purpose expressed.”
The function of the authority is intricately intertwined with its relationship to the state. If the Authority is an arm of the state rather than a separate entity, then many of its functions that necessarily incur debt could possibly violate § 213, Ala. Const.1901. Having already determined that the Authority is a separate entity and not an arm of the state, we need not examine this factor any further.
The facts in this ease are clearly distinguishable from those found in State Docks Commission v. Barnes, a ease relied on by this Court in Staudt, in which this Court held that the State Docks Commission was an arm of the state and thus immune from suit for the following reasons: the state owned the docks facilities in its own name; the Commission operated the docks facilities as an agent of the state and not as a separate entity; the funds generated by the state docks facilities belonged to the state, and in the lawsuit at issue in that case, those funds would have been subjected to liability, because “a lawsuit directly affecting a state contract or property right is tantamount to a suit against the state.” Staudt, 388 So.2d at 993.
In contrast, the Authority holds title to the property it is charged with maintaining and, in effect, has rights separate from the state, affecting that property and those rights are subject only to the dissolution of the Authority. The conveyance in Section 41-10-470, Ala.Code 1975, provides that the Authority “shall be invested with all rights and title that the State of Alabama had in the property conveyed [the real property on which the following buildings are located: the Alabama State House, the Folsom Administrative Building, the Public Health Building, the former Judicial Building, the Public Safety Building, the Archives and History Building, and the State Office Building], thereby, subject to the right of reverter to the state upon dissolution of the authority.” Moreover, a separate account in the state treasury was created for all proceeds derived from the sale of any bonds issued by the Authority and it is “subject to be drawn on by the authority ” for the purposes described therein. § 41-10-468, Ala.Code 1975.
Based on the foregoing, we believe that it is clear that the Authority was created as a separate entity, that it is not an arm of the state, and that it is not, therefore, immune from suit under § 14.
However, in reviewing the trial court’s summary judgment, we have not considered whether the Authority would have been entitled to a summary judgment on any issue other than sovereign immunity. Even though a trial court’s judgment based on faulty legal reasoning will not be disturbed on appeal if a proper basis for that judgment *794 can be found, Boykin v. Magnolia Bay, Inc., 670 So.2d 689, 642 (Ala.1990), we have not considered whether the Authority would have been entitled to a summary judgment on the merits.
The judgment of the trial court is reversed and this cause is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
HOOPER, C.J., and SHORES, KENNEDY, and COOK, JJ., concur.
BUTTS, J., dissents.

. We are unable to determine whether any of this work was done, but that fact is not determinative in our disposition of this action.

. The act creating the Authority was enacted in 1990, and the "Judicial Building" referred to in that act was apparently the building at 445 Dexter Avenue, formerly occupied by the Alabama Supreme Court and the Alabama Court of Criminal Appeals. In 1990, the Alabama Judicial Building Authority issued bonds to construct what is now referred to as the judicial building at 300 Dexter Avenue and which the judicial department has occupied since late 1993. The Alabama Judicial Building Authority holds title to this judicial building.

. Section 213, as amended by Amendment No. 26, further provides, in pertinent part: "After the ratification of this Constitution, no new debt shall be created against, or incurred by the state, or its authority, except to repel invasion or suppress insurrection.”