Limestone County Water and Sewer Authority ("the Authority") appeals from an adverse judgment entered by the Limestone Circuit Court on a complaint filed by the City of Athens ("the City") for reimbursement of funds allegedly expended by the City to train a water-treatment operator. We reverse and remand.
The Authority is a public corporation incorporated in 1980 pursuant to § 11-88-1, Ala. Code 1975, to provide water service for those portions of Limestone County not receiving such service from certain municipalities or other providers. The City has provided water for its residents since 1903, and it operates a water-treatment facility for that purpose. The City hired Tim Mitchell to be a water-treatment *Page 533 
operator and, on January 16, 1998, he began working at the City's facility. Before Mitchell was hired he had no experience as a water-treatment operator.
Training to be a water-treatment operator entails certification at ascending grades of expertise. An employee is required to take certain classes, to spend a certain number of hours working at a water-treatment facility, and to take an exam before he or she is certified at a particular grade level. The State of Alabama requires that a "Grade IV" water-treatment facility be operated by a "Grade IV" water-treatment operator when the facility is filtering more than two gallons of water per minute; when the facility is filtering two or less gallons of water per minute, then a "Grade III" operator may operate the facility without supervision. Ala. Admin. Code (ADEM), r. 335-10-1-.04.
In October 1998, while working for the City, Mitchell became certified as a "Grade III" water-treatment operator after having attended required classes, receiving on-the-job training and experience, and passing a required State exam. After reaching this grade level, Mitchell operated the City's facility without supervision on several occasions. Before reaching "Grade III" status, Mitchell had been designated as a water operator "trainee" by the City. Mitchell then continued to receive training and experience necessary toward achieving "Grade IV" status. However, on November 13, 1998, Mitchell began working for the Authority. Almost two years later, in October 2000, Mitchell obtained his "Grade IV" certification while employed by the Authority.
The City filed a complaint against the Authority on June 29, 2000, claiming that the Authority owed it, pursuant to §22-25-16, Ala. Code 1975, for the "total expenses" incurred by the City for providing the training necessary for Mitchell to receive certification as a "Grade III" and "Grade IV" water-treatment operator. The Authority answered the complaint and denied that it was obliged to pay the City under § 22-25-16. The Authority filed a motion for a summary judgment on September 4, 2002; the City responded to the Authority's motion and it filed its own motion for a summary judgment. Following a hearing, the trial court entered an order on December 11, 2002, denying the Authority's motion for a summary judgment and setting a hearing to determine the appropriate amount of reimbursement to be awarded to the City. Both parties agree that the trial court implicitly entered a summary judgment in favor of the City on the question whether the Authority is liable under § 22-25-16. The trial court did not provide any reasons for its decision.
The trial court received both written and oral evidence at the March 19, 2003, hearing concerning the appropriate amount of reimbursement to be awarded to the City for its training of Mitchell. The City contended that all of the expenses associated with keeping Mitchell as an employee, including his salary, life insurance matching, and retirement matching, were reimbursable; the Authority contended that only those expenses directly related to training, such as classes and travel to and from those classes, were reimbursable. The trial court entered a judgment on May 12, 2003, awarding the City the total amount of expenses it had incurred as a result of Mitchell's employment: $28,854.77. The Authority filed a motion to alter, amend, or vacate the judgment, which the trial court denied on June 13, 2003. The Authority appealed to our Supreme Court, which transferred the case to this court as one properly within the jurisdiction of this court because of the amount in controversy. See § 12-3-10, Ala. Code 1975. *Page 534 
The Authority's first argument on appeal is that it is not an entity subject to the reimbursement requirements of § 22-25-16, Ala. Code 1975.
Section 22-25-16 provides:
 "In those instances in which a water or wastewater operator of any municipality, municipal utility board, county, or the state is employed by the State of Alabama, any county, municipality, or another municipal utility board, within 24 months after completing the certification requirements mandated by this chapter, the total expense paid by the water or wastewater operator's governmental employer to enable the operator to become certified, including, but not limited to, salary paid during training, transportation costs paid to the trainee for travel to and from the training facility, room, board, tuition, overtime paid to other employees who fill in for the trainee during his or her absence, and any other related training expenses, shall be reimbursed to the municipality, municipal utility board, county, or the state which paid for the training. The municipality, municipal utility board, county, or the state which paid for the training shall submit an itemized sworn statement to the new employer of the water or wastewater operator, as the case may be, shall demand payment thereof, and may enforce collection of the obligation through civil remedies and procedures. The terms `water operator' and `wastewater operator' shall have the same meanings as in Section 22-25-1."
The Authority concedes that Mitchell was employed by the Authority as a water-treatment operator within 24 months after receiving his Grade III certification and that Mitchell worked for the City until being hired by the Authority. However, the Authority contends that it is not an entity to which the reimbursement provisions of § 22-25-16 apply. The Authority contends that it is a public corporation, not "the State of Alabama, any county, municipality, or another municipal utility board," and, therefore, that it is not subject to the reimbursement requirement of § 22-25-16. The City counters that the Authority must be considered part of "the State" when other provisions of the Code are considered and in order to ensure adherence to the clear legislative intent of § 22-25-16.
The Authority is a "water authority"; it is undisputed that such entities are created pursuant to § 11-88-1 et seq., Ala. Code 1975. Section 11-88-1(2) defines an "authority" as "[a] public corporation organized pursuant to the provisions of this article." Thus, there is no question that the Authority is a "public corporation." "It is well established by the decisions of this Court that a public corporation is a separate entity from the State and from any local political subdivision thereof, including a city or county. . . ." Knight v. West Alabama Envtl.Improvement Auth., 287 Ala. 15, 19, 246 So.2d 903, 905 (1971). This principle has been reaffirmed by our Supreme Court on numerous occasions. See, e.g., Stallings Sons, Inc. v. AlabamaBldg. Renovation Fin. Auth., 689 So.2d 790, 792-93 (Ala. 1996) ("`A public corporation is a separate entity from the state and from any local political subdivision.'" (quoting Coxe v. WaterWorks Bd., 288 Ala. 332, 337, 261 So.2d 12, 15 (1972))); Smithv. Industrial Dev. Bd. of Andalusia, 455 So.2d 839, 840 (Ala. 1984) ("[A] public corporation . . . is a separate entity from a county, city, or town. It is not the alter ego or agent of the municipality in which it is organized. It is also not a subdivision of the state."); Coxe v. Water Works Bd.,288 Ala. at 337, 261 So.2d at 15; Opinion of the Justices No. 120,254 Ala. 506, 511, 49 So.2d 175, 180 (1950); and Opinion of theJustices No. 169, 270 Ala. 147, 148, *Page 535 116 So.2d 588, 589-90 (1959) ("It has been repeatedly held that a public corporation is an entity separate and distinct from the State. . . .").
The City attempts to counter this authority by citing to §11-88-2, Ala. Code 1975, which states that "[t]his article is intended to aid the state in the execution of its duties by providing appropriate and independent instrumentalities of thestate with full and adequate powers to fulfill their functions." (Emphasis added.) The City argues that § 22-25-16 should be construed in conjunction with § 11-88-2 and that, because the Authority is contemplated to be an "instrumentality" of the State by § 11-88-2, it must be considered as part of "the State" as referenced in § 22-25-16. The City also cites to dictionaries[1] that define the term "instrumentality" as "a subsidiary branch" or an "agency," and contends that § 11-88-2
therefore dictates that water authorities are agencies of the State.
As the City itself observes, this court should not simply look at "isolated phrases or clauses" in ascertaining the meaning and application of a statute. E.g., Darks Dairy, Inc. v. AlabamaDairy Comm'n, 367 So.2d 1378, 1380 (Ala. 1979) (citing Opinionof the Justices No. 153, 264 Ala. 176, 85 So.2d 391 (1956)).
 "In interpreting a statute, this Court must ascertain and effectuate the intent of the Legislature as expressed by the statute. When determining legislative intent from the language used in a statute, a court may explain the language, but it may not detract from or add to the statute. When the language is clear, there is no room for judicial construction."
Water Works Sewer Bd. of Selma v. Randolph, 833 So.2d 604,607 (Ala. 2002) (citations omitted). The City's reading of §11-88-2 would have us ignore the fact that the statute states that entities incorporated under Chapter 88 are "appropriate andindependent instrumentalities of the state." (Emphasis added.) The City contends that the word "independent" merely refers to the governance of water authorities and cannot negate the identity of water authorities as instrumentalities of the State. However, the fact that overwhelming case authority stands for the proposition that public corporations are separate entities from the State indicates that the word "independent" bears significantly on the meaning of the phrase "instrumentalities of the state."
It must be admitted that "independent instrumentalities of the state" is not a readily understandable phrase. Indeed, our Supreme Court has previously observed as much. In its opinion on rehearing in Town of Hackleburg v. Northwest Alabama Gas Dist.,277 Ala. 355, 170 So.2d 792 (1964), our Supreme Court focused on Title 37, § 402(64), Ala. Code 1940 (Recomp. 1958), which concerned "gas districts," which are considered public corporations. That section started with the sentence: "This article is intended to aid the state in the execution of its duties by providing appropriate and independent instrumentalities of the state with full and adequate powers to fulfill their functions." Concerning this statement the Court observed:
 "This first sentence . . . is self contradictory. There are no `duties' upon the state to supply its citizens with gas. The phrase `by providing appropriate and independent instrumentalities of the state with full and adequate powers to fulfill their functions' is paradoxical, in that an `independent instrumentality of *Page 536 
the state' is a free unit within itself, and if independent, is not an agency of the state."
Town of Hackleburg, 277 Ala. at 359, 170 So.2d at 795 (opinion on rehearing). Having taken notice of the "paradoxical" nature of the phrase "independent instrumentality of the state," the Court concluded that "[u]nder the above provisions, we seriously doubt that a gas district could properly be classified as a state agency, though it is a public agency organized pursuant to applicable statutory provisions." Id.
In other words, a public corporation is an "instrumentality of the state" in the sense that it is created pursuant to the laws of the State and for the public benefit, but it is "independent" of the State and "is not an agency of the state" because the State does not own or operate the corporation. "A public corporation is a separate entity from a county, city, or town, and is not a subdivision of the state. Moreover, a public corporation is not the alter ego or agent of the county or the municipality in which it is organized." Dobbs v. Shelby CountyEconomic Indus. Dev. Auth., 749 So.2d 425, 430 (Ala. 1999) (citations omitted).
For this court to hold that a public corporation such as the Authority is equivalent to "the State" as it is referenced in §22-25-16 because § 11-88-2 terms water authorities "instrumentalities of the state" would require us to ignore the multiple precedents at odds with such a holding, to ignore the plain meaning of the term "independent," and to ignore the structure of public corporations.
The phrase "independent instrumentalit[y] of the state" is employed 10 times in the Alabama Code in addition to its use in §11-88-2, each time in reference to designated public corporations.[2] Despite the prevalent use of the phrase with respect to public corporations, we have not been referred to any case in which any of these public corporations have been adjudicated to be the equivalent of the State. In fact, as is apparent from the cases cited above, the courts have determined numerous times that public corporations are not entities of the State. We therefore conclude that the Authority cannot be deemed, on the basis of § 11-88-2, to be part of "the State" as the term is employed in § 22-25-16.
The City also argues that the Authority must be considered part of "the State" for purposes of § 22-25-16 because the Authority possesses certain statutory powers similar to the powers of the State. It is true that under Title 11, Chapter 88, the Authority possesses certain powers similar to those of the State, such as the power of eminent domain, see § 11-88-6(e), Ala. Code 1975, and that it is exempt from State and local license and privilege taxes, see § 11-88-7(b)(15), Ala. Code 1975. However, this is true of many of the public corporations created under the laws of Alabama, and the courts nonetheless have repeatedly and consistently concluded that public corporations are entities separate from the State. See, e.g., § 4-3-11(12), *Page 537 
Ala. Code 1975 (eminent domain for airport authorities); §9-6-8(14), Ala. Code 1975 (eminent domain for environmental-improvement authorities); and § 33-12-5(3), Ala. Code 1975 (eminent domain for the Elk River Development Agency). Possessing certain powers normally associated with the State does not necessarily make an entity part of the State.
A third and final reason offered by the City as to why the Authority should be considered part of "the State" for purposes of § 22-25-16 is that deciding otherwise would thwart the alleged intent of the Legislature when it enacted that provision into the law. The City contends that the Legislature "adopted [§ 22-25-16] to eliminate predatory hiring on the part of certain public water service providers." The City concedes that the words of the statute do not expressly include entities such as the Authority, but it points us to the rule of statutory construction that "[a] literal interpretation will not be adopted, when it would defeat the purposes of a statute, if any other reasonable construction can be given to the words." Harrington v. State, 200 Ala. 480,482, 76 So. 422, 424 (1917).
While this rule exists, it does not give a court carte blanche to ignore the words of a statute to fit what it may deem to be a wiser result. As we already have noted, in determining legislative intent from the language used in a statute, we may not add or detract from that language and "[w]hen [that] language is clear, there is no room for judicial construction." WaterWorks Sewer Bd. of Selma, 833 So.2d at 607. See also, e.g.,Alabama Indus. Bank v. State ex rel. Avinger, 286 Ala. 59, 62,237 So.2d 108, 111 (1970) ("When [statutory] language is plain, it should be considered to mean exactly what it says.").
The only "evidence" that the City offers as to the Legislature's alleged intent to include public corporations such as the Authority within the purview of § 22-25-16 is the Legislature's amendment of that section in 2002. The Legislature originally passed the provision codified at § 22-25-16 in 1996; at the time, the title to the Act containing it provided:
 "To amend Section 36-21-7, Code of Alabama 1975, relating to the reimbursement of mandated training costs when one governmental entity employs certain employees from another governmental entity within a certain period, and to provide similar requirements for the reimbursement of training expenses for certain governmental employees."
Ala. Acts 1996, Act No. 96-626 (emphasis added). The Legislature amended § 22-25-16 in a 2002 Act, with the title stating: "To Amend Section . . . 22-25-16 . . . Code of Alabama 1975, relating to the reimbursement of training costs when one entity
hires certain employees from another entity within 24 months of the employee's completion of mandated training; to further provide what expenses are reimbursable." Ala. Acts 2002, Act No.2002-424 (emphasis added).
The City contends that the Legislature omitted any mention of "governmental" entities in the title to the 2002 amendment because the Legislature did not intend for § 22-25-16 to be solely limited in its application to "governmental" entities. Thus, from the title of the 2002 amendment the City claims that it can be inferred that the Legislature's intent is that entities such as the Authority should not escape the reimbursement requirements of § 22-25-16.
The City's reasoning as to why the term "governmental" was omitted from the title of the 2002 amendment is purely speculative: the City offers no support that its proffered reason for the change was, in fact, the reason for it; nor does common sense mandate such a conclusion. In fact, if the City's speculation was correct, one would expect to find a change in the text of the body of the provision, not just in the *Page 538 
title of the amendment. However, the Legislature did not take the opportunity in the 2002 amendment to add language including entities such as the Authority within the purview of § 22-25-16. Instead, the 2002 amendment simply clarified what expenses, for purposes of reimbursement, would be included as part of the "training" of an employee who falls within the coverage of the section.[3] See Amendment Notes, § 22-25-16, Ala. Code 1975. Thus, the City's argument based upon the wording of the title of the 2002 amendment to the Act is not persuasive.
The rest of the City's arguments concerning the Legislature's intent are composed of policy arguments as to why it allegedly would be unwise or unfair to exclude the Authority and other entities like it from the reimbursement requirements of §22-25-16. Even if it is true that such an omission is unwise or unfair, "[c]ourts may not improve a statute, but may only expound it." Siegelman v. Chase Manhattan Bank (USA), N.A.,575 So.2d 1041, 1045 (Ala. 1991).
The language of § 22-25-16 cannot be construed to apply to the Authority. Therefore, we reverse the summary judgment entered against the Authority finding it liable for reimbursement of training expenses related to the employment of Tim Mitchell, and we remand the cause for the entry of a judgment consistent with this opinion.
REVERSED AND REMANDED.
YATES, P.J., and CRAWLEY, THOMPSON, and PITTMAN, JJ., concur.
[1] See American Heritage Dictionary of the English Language
(4th ed. 2000), Webster's Revised Unabridged Dictionary (1998), and Black's Law Dictionary (6th ed. 1990).
[2] See § 9-6-17, Ala. Code 1975 (environmental-improvement authorities); § 11-49A-16, Ala. Code 1975 (public-transportation services in class 3 municipalities); § 11-49B-15, Ala. Code 1975 (public-transportation services in class 1 municipalities); §11-50-416, Ala. Code 1975 (gas districts); § 11-54-187, Ala. Code 1975 (commercial-development authorities); § 11-89-2, Ala. Code 1975 (water, sewer, solid-waste-disposal, and fire-protection districts); § 16-17-15, Ala. Code 1975 (educational building authorities); § 16-18-17, Ala. Code 1975 (public-education building authorities); § 39-7-33, Ala. Code 1975 (improvement authorities); and § 41-10-149, Ala. Code 1975 (historical-preservation authorities).
[3] Moreover, the City's argument that, by omitting the term "governmental" from the title to the amendment, the Legislature meant to include public corporations such as the Authority within the coverage of § 22-25-16 is in tension with its previous argument that § 22-25-16's use of the term "the State" was intended to refer to such public corporations.